hPETERS, J.
Rachael Guillory appeals the trial court’s judgment authorizing Laura Englebrook, *377 the mother of his child, to relocate to the State of New Jersey and take the child with her. For the following reasons, we reverse the trial court’s judgment.
DISCUSSION OF THE RECORD
Jessica Englebrook (Jessica) was born on April 26,1995, of a relationship between Rachael Guillory (Rachael) and Laura En-glebrook (Laura). The first judgment rendered in this litigation resulted from a petition filed on October 6, 1995, to establish paternity. Rachael acknowledged that he was Jessica’s father in his response to Laura’s petition. On January 26,1996, the trial court signed a judgment granting joint custody to the parents with Laura as Jessica’s domiciliary custodian, ordering Rachael to pay Laura $125.00 per month in child support, and awarding Rachael specific visitation rights.
On June 19, 1996, Rachael filed a motion to modify his visitation privileges, but, before this matter was heard, on November 15, 1996, Laura was arrested in Opelousas, Louisiana, for DWI. Three days later, on November 18, 1996, Rachael obtained an ex parte order granting him temporary custody of Jessica. At a hearing held December 6, 1996, the trial court awarded Rachael custody of Jessica, terminated his monthly support obligation, and awarded Laura “reasonable supervised visitation rights.”
Laura filed the next pleading in this litigation on March 4, 1998, in the form of a rule to show cause why she should not be awarded custody. Rachael failed to appear at the May 26, 1998 hearing, having fled the state with Jessica. The trial court issued a bench warrant for Rachael and awarded Laura temporary custody of Jessica. Rachael ultimately returned to Louisiana with Jessica, and, on October 6, 1999, began |2serving a ninety-day parish jail sentence for contempt of court. Jessica was returned to her mother’s custody.
By a pleading filed December 16, 1999, Laura recognized that her current custody of Jessica was derived from Rachael’s failure to appear at the May 26, 1998 hearing, and she requested that the temporary custody decree be changed to permanent and that Rachael be ordered to pay child support. Rachael responded to this pleading by filing a custody request of his own. After extensive pretrial activity, on January 23, 2001, the date set for trial on the conflicting demands, the parties entered into an agreement which granted Laura sole custody of Jessica, with the award to be reviewed after one year to consider whether joint custody would then be appropriate. Rachael received specific visitation privileges and agreed to pay child support beginning at $300.00 per month and ultimately being reduced to $200.00 per month. The agreement also included an acceptance by the parties of an extensive custody implementation plan. Approximately three and one-half months later, on May 10, 2001, the trial court executed a written judgment incorporating the terms of the agreement.
Even before the trial court reduced the January 23, 2001 agreement to a written judgment, Laura, on April 10, 2001, informed Rachael that she intended to move to New Jersey with Jessica. Rachael filed an objection to this proposed relocation. After a June 14, 2001 trial, the trial court granted Laura’s request to relocate to New Jersey with Jessica, modified Rachael’s visitation privileges based on the relocation, and modified other terms of communication between the parents. Rachael has appealed, asserting four assignments of error.
OPINION
| ^Issues involving parental relocation where a custody order exists are governed *378 by La.R.S. 9:355.1 et seq. Additionally, “[t]he relocating parent has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child.” La.R.S. 9:355.13 (emphasis added). The best interest burden requires proof of certain factors that the trial court must consider:
In reaching its decision regarding a proposed relocation, the court shall consider the following factors:
(1) The nature, quality, extent of involvement, and duration of the child’s relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child’s life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child’s preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8)Any other factors affecting the best interest of the child.
La.R.S. 9:355.12.
In its oral reasons for judgment given immediately after the completion of ^evidence and closing arguments, the trial court did not mention whether it considered the factors in La.R.S. 9:355.12, but stated:
Laura Englebrook is from New Jersey. She has extended family there. She has a father who is ill. Job opportunities are there. There are greater opportunities there in New Jersey than in Louisiana in her field of Computer Tech. Her mother has a home there. Her father has a home there. Maybe two (2) homes there.
After granting the relocation request, the trial court modified the existing visitation schedule by limiting Rachael’s visitation rights to two weeks at Thanksgiving, Christmas, and Easter, and all of the summer vacation period except for two weeks at the beginning and two weeks at the end of the summer. Additionally, rather than establishing a transportation plan, the trial court further ordered that the parties reach a mutual agreement on how Jessica would be transported, but ordered that Rachael pay the cost of whatever plan they might agree on.
In his first assignment of error, Rachael asserts that the trial court erred in concluding that Laura established that the relocation request was made in good faith as required by La.R.S. 9:355.13. We agree.
Laura based her request for relocation to New Jersey on the existence of close ties with her family there, her father’s poor health, and greater job opportunities. Laura’s testimony was the only evidence presented in support of her request.
The trial court correctly considered that Laura is originally from New Jersey and *379 has family there. However, the evidence does not support that the proposed relocation was made in good faith. Importantly, Laura's proposed relocation occurred on the heels of the agreement between Rachael and Laura that Laura would have sole custody of Jessica. Although Laura testified to close ties with her family in New Jersey and her desire to be with her family, she has been in Louisiana for eleven Ryears. Laura’s actions and evidence of her family’s interactions with her indicate that she has no close ties with that family. For instance, Laura testified that her father had a stroke that occurred “[sjometime after Christmas, New Years. Sometime around there.” However, she further testified that he had fully recovered before she received notification of its occurrence from any family member. In attempting to explain why she was not notified of her father’s stroke, she testified that she was told that her father “didn’t even know he was having a stroke.” Further, while Laura testified that she wants to move near her father “in case he has a heartache,”[1] her actions prove that either this was not a serious motive for the relocation or that she was at least not forthcoming and in good faith in entering into the January 23, 2001 custody agreement because she entered into that agreement after she allegedly became aware that her father had suffered a stroke. Moreover, other testimony raises questions concerning whether Laura’s father even suffered a stroke. Even so, by the time of trial, Laura testified that her father was no longer ill.
Concerning job opportunities in New Jersey, Laura’s self-serving testimony in that regard was based on an Internet inquiry that revealed that jobs were available, not that she had been offered employment. In Pittman v. Pittman, 94-952, pp. 4-5 (La.App. 5 Cir. 3/15/95), 653 So.2d 1211, 1213, writ denied, 95-1526 (La.9/29/95), 660 So.2d 881, the court noted that, “when employment is being offered as good cause for relocation, the pertinent question is whether said employment has indeed been obtained by the removing parent or their spouse.” (Emphasis added.) Thus, as a matter of law, Laura failed to establish employment as good cause for the relocation.
RThe contradictory testimony Laura presented to the trial court, together with the timing of her request, does not support that Laura met her burden of proving that the proposed relocation was in good faith. Furthermore, Laura’s reasons for relocating were personal to her, and the effect on Jessica’s best interests appeared as an afterthought.
Having found that Laura did not meet her burden of proof on the “good faith” element of La.R.S. 9:355.13, we need not consider whether Laura proved that the relocation would be in Jessica’s best interest. We note, however, that the trial court did not even consider the lack of evidence on this element of La.R.S. 9:355.13 and based its decision entirely on its interpretation of the facts affecting Laura.
DISPOSITION
For the foregoing reasons, we reverse the trial court’s judgment authorizing Laura Englebrook to move to New Jersey with her daughter, Jessica, and reinstate the May 10, 2001 consent judgment. We tax all costs to Laura Englebrook.
REVERSED.
SAUNDERS, J., concurs in the result and assigns written reasons.

. We assume she meant heart attack.